UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| STEVEN D. HOFF, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 06-cv-4071 |
| ) | |
| PERFORMANCE FOOD GROUP, INC., ) | |
| ) | |
| Defendant. ) | |

### <u>O R D E R</u>

Before the Court is the Motion for Summary Judgment filed by Defendant, Performance Food Group, Inc., on February 19, 2008 [Doc. 16], the Motion for Leave to File an Amended Complaint filed by Plaintiff, Steven D. Hoff, on August 14, 2008 [Doc. 38], and the Supplemental Motion for Summary Judgment filed by Defendant on September 16, 2008 [Doc. 46]. For the reasons that follow, the Motion for Summary Judgment is GRANTED, the Motion to Amend is GRANTED IN PART AND DENIED IN PART, and the Supplemental Motion for Summary Judgment is DENIED.

#### BACKGROUND

The following facts are undisputed. Plaintiff worked as a maintenance technician for Defendant when he applied for and received leave under the Family and Medical Leave Act (FMLA) from April 22, 2003 to July 15, 2003 due to lower back degenerative disc disease. At the conclusion of the leave, Plaintiff was subject to a 35 pound weight lifting restriction and could not perform any repetitive

twisting. Plaintiff could not "carry beams," perform "racking repair," inspect all equipment, or perform annual inspections of refrigeration compressors.[1] He also has trouble getting in and out of the shower and tub, doing laundry, walking more than 150 feet without resting, and walking on rough surfaces. On July 10, 2003, prior to returning to work, Plaintiff telephoned Tina Rossmont, another employee of Defendant, and sought to return to work on light duty in the maintenance shop or to do clerical work. On July 15, 2003, Rossmont informed Plaintiff that Defendant would not allow him to return to work. Plaintiff's employment was terminated on July 31, 2003. After his termination, on September 11, 2003, Plaintiff authored a letter to Tony Schiltz, Defendant's Vice President of Human Resources, in which he requested accommodations under the Americans with Disabilities Act.

Plaintiff filed a Charge of Discrimination with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission on January 2, 2004. He claimed that he was discharged "in lieu of accommodation on July 31, 2003 because of physical handicap, back injury." There is no suggestion in the Charge of Discrimination that Plaintiff is asserting a disparate treatment claim or that he is asserting a failure to re-hire claim. Plaintiff received his right to sue letter and this lawsuit follows.

---

[1] Plaintiff does not dispute that he cannot perform these functions; rather, he disputes that these functions are "essential functions" of his job as a maintenance technician.

# DISCUSSION

## Motion to Amend

Plaintiff seeks to amend the Amended Complaint to identify the correct legal entities and to change certain factual allegations. Specifically, Plaintiff changes the naming of Defendant from "Performance Food Group, Inc., a corporation, d/b/a Thoms Proestler Company, a corporation" to "Thoms Proestler Company, a Delaware Limited Liability Company, as successor to Thoms Proestler Company, an Iowa Corporation, a wholly owned subsidiary of Performance Food Group, A Tennessee Corporation." With respect to the factual allegations, the Amended Complaint alleges that Plaintiff underwent back surgery in January 2003, that he provided a release to return to work and a request for accommodations to Defendant in July 2003, and that Defendant failed to consider the accommodations (with an implication that Defendant thus terminated Plaintiff's employment). The proposed second amended complaint alleges that Plaintiff underwent surgery in May 2003, that he was released to return to work and requested an accommodation in July 2003, that he provided a second doctor's release with different restrictions and requested different accommodations in September 2003, and that Defendant failed to consider the accommodations requested. Presumably, Plaintiff now seeks to assert that Defendant either terminated his employment after September 2003, or that it failed to rehire him (having terminated his employment in July 2003) when he provided the second doctor's note.

Federal Rule of Civil Procedure 15(a)(2) provides that a party may amend their pleading with the court's permission and that leave shall be freely granted. Leave to amend may be denied if there has been undue delay, bad faith, repeated failure to cure deficiencies, futility, or undue prejudice. Barry Aviation, Inc. v. Land O'Lakes Municipal Airport Commission, 377 F.3d 682, 687 (7th Cir. 2004). In this particular case, moreover, the parties are also subject to a scheduling order which set a November 1, 2007 deadline for amending the pleadings [Doc. 9, and following entry adopting the schedule entered on July 18, 2007]. As such, Plaintiff must show "good cause" for modifying the schedule pursuant to Federal Rule of Civil Procedure 16(c)(4). Plaintiff's motion does not include the necessary statement of good cause: it merely states that it seeks to correct some factual errors.

Defendant objects and argues that Plaintiff is seeking to add a new party and a new claim. As to the naming of the proper Defendant, the Motion for Summary Judgment (filed by Defendant prior to the Motion to Amend) states that:

> Hoff incorrectly sued Performance Food Group company ("PFG") "d/b/a Thoms Proestler Company." Thoms-Proestler Company, LLC is a Delaware limited liability company ("TPC"), which is the successor to Thoms Proestler Company, an Iowa Corporation, which was the employer of Hoff at times material to Hoff's Complaint. [Doc. 16, p. 1, ¶ 2].

Defendant goes on to note that TPC is a wholly owned subsidiary of PFG [Doc. 16, p. 2, ¶ 3]. It appears that Plaintiff's proposed second amended complaint merely parrots Defendant's own representation of the corporate relationship between TPC and PFG. As such, it is unclear what objection, other than timeliness, PFG has to the proposed amendment. This proposed amendment appears to merely change a

4

defect in the pleadings.  Defendant is aware of the claims against it and has received the necessary notice.  This proposed change does not make any modification to any of the claims made by Plaintiff.  As such, this amendment is allowed.

With respect to Plaintiff's presumed allegation that Defendant failed to rehire him after he submitted the September 2003 changes to his physical limitations, Defendant asserts that such an amendment would be futile.  Plaintiff has not responded to this argument in his lengthy reply.  The Court notes that the Charge of Discrimination only alleges that Defendant terminated Plaintiff's employment; it does not allege that Defendant failed to rehire Plaintiff.  Moreover, the undisputed evidence reveals that Plaintiff's employment was terminated in July 2003.  Therefore, adding a presumed allegation that Defendant failed to rehire Plaintiff in September 2003, would be futile as it would not survive a motion for summary judgment.  Kind ex. rel. King v. East St. Louis School Dist. 189, 496 F.3d 812, 819 (7th Cir. 2007).  In light of the futility of the amendment and Plaintiff's failure to respond to Defendant's argument (See Local Rule 7.1), this amendment is not allowed.[2]

In sum, the Motion to Amend is allowed only to the extent that Plaintiff changes the naming of Defendant.

---

[2] The remaining change was with respect to the date of Plaintiff's surgery from January, 2003, to May, 2003.  Plaintiff refers to a January, 2003, surgery in his response to the Motion for Summary Judgment; as such, the Court assumes that January is the correct date.  To the extent that this fact is incorrect, Plaintiff may correct the fact pursuant to Federal Rule of Civil Procedure 15(b) or in the proposed agreed final pretrial order which would supersede all pleadings.

## Motions for Summary Judgment

### Standard

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court as to portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the movant has met its burden, to survive summary judgment the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which [s]he bears the burden of proof at trial." Warsco v. Preferred Tech. Group, 258 F.3d 557, 563 (7th Cir. 2001); See also Celotex Corp., 477 U.S. at 322-24. "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." Chemsource, Inc. v. Hub Group, Inc., 106 F.3d 1358, 1361 (7th Cir. 1997).

This Court must nonetheless "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989). In doing so, this Court is not

"required to draw every conceivable inference from the record -- only those inferences that are reasonable." Bank Leumi Le-Isreal, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991). Therefore, if the record before the court "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of material fact exists and, the moving party is entitled to judgment as a matter of law. McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 796 (7th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). However, in ruling on a motion for summary judgment, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

## Analysis

Defendant first argues, in its supplemental Motion for Summary Judgment, that Plaintiff has failed to exhaust his administrative remedies. Prior to filing a discrimination lawsuit in federal court, a plaintiff must exhaust his administrative remedies. This includes filing a timely Charge of discrimination (hereinafter "Charge") with the Equal Employment Opportunity Commission (EEOC). Chaudhry v. Nucor Steel-Indiana, 546 F.3d 832, 836 (7th Cir. 2008) (Title VII case). The subsequent federal lawsuit must be within the scope of the Charge filed with the EEOC. Conner v. Illinois Dept. of Natural Resources, 413 F.3d 675, 680 (7th Cir. 2005).

Plaintiff filed a Charge with the Illinois Department of Human Rights and the EEOC on January 2, 2004. In the Charge, Plaintiff asserts that he was

7

"discharge[d] in lieu of accommodation on July 31, 2003, because of physical handicap, back injury."[3] The Charge also indicates that Plaintiff is "handicapped within the meaning of the Ill Human Rights Act Section 1-103(1) [sic]."[4] The Charge neither mentions the ADA nor that Plaintiff suffered from a disability. Defendant argues that this Charge then is "strictly limited" to making a claim under the Illinois Human Rights Act that Plaintiff was discharged due to a handicap rather than discharged due to a disability under the ADA.[5] To support this argument, Defendant notes that the definitions for "disability" under the ADA and "handicap" under the state statute are different and the state definition of handicap does not require a substantial limitation of a major life activity as the ADA requires.

Notwithstanding Defendant's argument, Plaintiff's Complaint is within the scope of his Charge. Defendant has cited to no case authority that mandates the use of either the terms ADA or disability within a Charge for it to fall within the federal statute. Rather, claims made in a complaint must be "like or reasonably related" to the Charge such that, at minimum, they "describe the *same conduct* and

---

[3] As a second issue, Plaintiff further asserted that he was discharged in retaliation to his opposition to various employment practices. However, this claim is not a part of the Complaint filed before this Court.

[4] Plaintiff filed an amendment on May 24, 2004, that merely changed the naming of Defendant.

[5] Defendant further argues that the Charge does not make an allegation of discriminatory treatment. Plaintiff avers that he is not pursuing a claim of discriminatory or disparate treatment and is only claiming that Defendant failed to accommodate his disability in violation of the ADA.

8

implicate the *same individuals*." Cheek v. Western and Southern Life Ins. Co., 31 F.3d 497, 501 (7th Cir. 1994) (emphasis in original). Moreover, claims that "can be reasonably expected to grow out of an EEOC investigation of the charge" may also be brought in a subsequent federal lawsuit. Sitar v. Indiana Dep. of Transp., 344 F.3d 720, 726 (7th Cir. 2003).[6] In this case, Plaintiff, who is not an attorney, chose to specify the law under which he was complaining. Such specificity, however, does not automatically limit Plaintiff's claims to a state law claim of failure to accommodate. The Charge certainly implicates the same conduct and the same persons as are identified in the Complaint. Plaintiff's claim before this Court are also certainly like or reasonably related to the claim made in the Charge.

The Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, prohibits discrimination in employment against a qualified person with a disability because of that disability. Id. at § 12112(a). A qualified individual is a person with a disability who could perform the essential functions of a job with or without accommodation. Id. at § 12111(8). The Act defines disability as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

---

[6] The Court is mindful that the two cases cited do not address an identical argument to the one made by Defendant in this case. However, the principles still apply.

9

In order to establish a failure to accommodate claim, a plaintiff must show that: "(1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability." E.E.O.C. v. Sears, Roebuck & Co., 417 F.3d 789, 797 (7th Cir. 2005). Thus, a plaintiff must show that he has an impairment that substantially limits a major life activity, the he has a record of an impairment, or that he was regarded as having such an impairment by a defendant. In addition, a plaintiff must show that he is "qualified to perform the essential functions of the job in question, with or without reasonable accommodation, and [] [that] he has suffered an adverse employment action as a result of his disability." Dargis v. Sheahan, 526 F.3d 981, 985-986 (7th Cir. 2008). In his Complaint, Plaintiff claims that he is disabled under the ADA "in that he has a lower back degenerative disc disease problem which substantially limited one or more of his essential life functions including working and lifting."

Defendant's only argument in its Motion for Summary Judgment is that Plaintiff is not disabled within the meaning of the ADA. First, Defendant argues that Plaintiff is not substantially limited in the major life activities of working or walking. Second, Defendant argues that Plaintiff has no record of an impairment. Third, Defendant argues that it never regarded Plaintiff as disabled. In response, Plaintiff waives his contention that he is substantially limited in the major life activity of working.[7] Plaintiff contends, however, that he was limited in the activity

---

[7] There is no evidence that Plaintiff is "unable to work in a broad class of jobs." Sutton v. United Air Lines, Inc., 527 U.S. 471, 491-492 (1999); See also Squibb v. Memorial Medical Center, 497 F.3d 775, 781-782 (7th Cir. 2007).

10

of walking and that Defendant regarded him disabled because of its "100% healed policy."

The first question to be answered, then, is whether Plaintiff has an impairment that substantially limits the life activity of walking. Whether a person is disabled within the meaning of the ADA is an "individualized inquiry." Sutton v. United Air Lines, Inc., 527 U.S. 471, 483 (1999). There appears to be no question that walking is a major life activity. 29 C.F.R. § 1630.2(i). Regulations state that the term "substantially limits" means:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
>
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.
>
> 29 C.F.R. § 1630(j).

Plaintiff does not contend that he is unable to walk; rather that he is significantly restricted in walking. In describing the condition, Plaintiff testified:

> Q. Did your physical and mental impairments after your FMLA leave ended in July 2003 limit you in walking?
>
> A. Yes.
>
> Q. Would you describe how it limited you in walking?
>
> A. At that point I could only walk about 150 feet and have to take a break.

Q. And how long of a break would you have to take before you started walking again?

A. A couple minutes.

Q. And then you would start walking again?

A. Yes.

Q. As long as you took breaks –

A. Uh-huh.

Q. – could you continue walking?

A. No. It would get to a point where I was – like, three or four times of doing that, then I'd have to take a longer break.

Q. So then you'd start out going approximately 150 feet, take a break for a couple of minutes walking, and you walk in 150-foot segments three or four times, taking a couple-of-minute breaks, and then after that, you'd have to take longer breaks.

A. Right.

***

Q. Any other limitation on your walking besides what –

A. No.

Q. – you've already explained to me.

A. Rough surfaces were kind of bad at times. Just numbness in this left leg, and it sometimes just couldn't feel how the surface was, so I'd have to be careful, make sure if I was walking on rough surfaces.

Q. And can you tell me what you mean by "rough surfaces," what that would be?

A. Uneven surfaces, steps, like, yards where the ground is uneven.

Q. So, then, in those situations, it would take you longer, and you'd have to be more careful?

> A.  Right.
>
> Q.  But you could still move ahead.  You'd just take longer to do it –
>
> A.  Right.

(Steven Hoff Dep. pp. 38-40).

Thus, Plaintiff can only walk in three of four increments of 150 feet, between which he takes a couple of minutes' break, before he requires a longer break; and, he has trouble walking on uneven surfaces such that it takes him longer and he must be more careful.

In E.E.O.C. v. Sears, Roebuck & Co., the Seventh Circuit held that a jury could conclude that the "severe difficulty in walking the equivalent of one city block was a substantial limitation compared to the walking most people do daily." 417 F.3d at 802.  Similarly, in this case, a jury could conclude that the inability to walk more than 150 feet without resting is a significant restriction on the activity of walking.  A jury could also conclude, based on Plaintiff's deposition testimony, which is undisputed, that this condition could last indefinitely.  Such a determination is a factual inquiry that is best left to a finder of fact.  In light of this conclusion, it is unnecessary to discuss Plaintiff's alternate theory of disability – that he was regarded as having such an impairment.

Defendant also appears to argue that it is not liable under the ADA if, at the time of the firing, it was unaware of any of Plaintiff's disabilities.  Defendant argues that because it did not know that Plaintiff was restricted in the major life activity of walking, it cannot be liable under the ADA.  To support this proposition, Defendant

points to Hedberg v. Indiana Bell Telephone Co., Inc., 47 F.3d 928 (7th Cir. 1995), wherein the Seventh Circuit held that "[w]here there is no real issue that an employer who fired a disabled employee knew nothing of the disability, summary judgment in favor of the employer is appropriate." Id. at 934. Certainly, then, if Defendant was wholly unaware of Plaintiff's disability, there would be no ADA liability.

Defendant's reliance on Hedberg is misplaced. That case says nothing about whether or not the employer must be aware of the specific major life activity constituting the employee's disability. It only stands for the proposition that in order for liability to attach under the ADA, the employer must be aware of the employee's disability. Apparently this was the case in Hedberg where the parties agreed that the plaintiff's medical condition, primary amyloidosis, constituted a disability, but that defendants were unaware of the diagnosis. See Hedberg at 931. Had the employer known of the diagnosis, under the ADA definition of disability, this means that the employer either knew or had a reasonable basis to infer that the employee was substantially limited in a life activity.

In the case at bar, the evidence of Plaintiff's medical condition reported to Defendant was that he had a 25 pound lifting limitation; that he should do no work over shoulder level or below knee level; that he should do no repetitive twisting; and that he should shift from sitting to standing as required. These reported limitations, without more explanation, would not make it immediately or inferentially apparent that Plaintiff had impairments that would affect the life

activity of walking.  See Sanglap v. LaSalle Bank, FSB, 345 F.3d 515 (7th Cir. 2003) and Mays v. Principi, 341 F.3d 866, 869-870 (7th Cir. 2002).  Plaintiff has conceded and the Court has found supra that Plaintiff's reported limitations and restrictions are not sufficient to show that he is "unable to work in a broad class of jobs."  This is another way of saying that Defendant was therefore unaware that Plaintiff was "disabled" from working.  By the same logic, Plaintiff's reported impairments would not give Defendant any basis to know or even to reasonably infer that Plaintiff was disabled from walking.  Consequently, there is an absence of sufficient evidence in the record to show that Defendant was aware that Plaintiff was disabled in any respect within the meaning of disability as defined in the ADA.

     In the case at bar, Defendant was aware that Plaintiff had impairments, even though it was not aware that Plaintiff was limited in the life activity of walking.  It is undisputed that Defendant was aware that Plaintiff was taking FMLA leave for a medical condition prior to his termination.  (Steven D. Hoff Dep. at pp. 6-7, Hoff Dep. Ex. 1, p. 2).  It is undisputed that when Plaintiff spoke to Rossmont on July 10, 2003, he requested a return to light duty work.  (Hoff Dep. pp. 8-12).  On July 15, 2003, Plaintiff further informed Rossmont that he believed he could perform his job with accommodations.  (Hoff. Dep. p. 13).  It is further undisputed that Defendant knew Plaintiff had a "disability" – in Tony Schiltz's July 21, 2003 letter to Plaintiff, he characterized Plaintiff as having an indefinite disability.  (Hoff Dep. Ex. 8).  Each of these instances and Plaintiff's back surgery, only informed Defendant that he had limitations related to his back, not that he was substantially limited in the

15

major life activity of walking.  See Mays, 301 F.3d at 869-870 ("The number of Americans restricted by back problems to light work is legion.  They are not disabled.").

There is also no dispute that Plaintiff did not inform Defendant that he was limited in his ability to walk.  Plaintiff's doctor's note, dated July 10, 2003 did not inform Defendant that Plaintiff required accommodations in the area of walking.  Instead, the note indicated that Plaintiff had a 25 pound lifting limit, that he should do no work over shoulder level or below knee level, that he should do no repetitive twisting, and that he should shift from sitting to standing as required.  (Hoff Dep. Ex. 2).  These restrictions would not make it immediately apparent that Plaintiff had an impairment that would affect the life activity of walking.  Disability as defined in the ADA means "a physical or mental impairment that substantially limits one or more of the major life activities of the employee."  Here, Defendant was aware that Plaintiff was impaired, but was not aware that Plaintiff was disabled within the meaning of the ADA.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by Defendant on February 19, 2008 [Doc. 16] is GRANTED, the Motion for Leave to File an Amended Complaint filed by Plaintiff on August 14, 2008 [Doc. 38] is GRANTED IN PART AND DENIED IN PART as noted above, and the Supplemental Motion for Summary Judgment filed by Defendant on September 16, 2008 [Doc. 46] is DENIED.

CASE TERMINATED

Entered this <u>11th</u> day of March, 2008

                                                    s/ Joe B. McDade
                                                    JOE BILLY MCDADE
                                                    United States District Judge